435 A.2d 1212

COMMONWEALTH of Pennsylvania, Appellee,

v.

Joshua James TYLER, Appellant.

Supreme Court of Pennsylvania.

Argued May 21, 1981.

Decided Sept. 24, 1981.

Harold N. Fitzkee, Jr., Philadelphia, for appellant.

John C. Uhler, Dist. Atty., Sheryl Ann Dorney, Asst. Dist. Atty., for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

WILKINSON, Judge.

Appellant and his co-defendant, Elizabeth Fells, were charged with possession of a controlled substance [1], possession with intent to deliver a controlled substance [2], and criminal conspiracy [3]. After a jury trial, appellant and his co-defendant were found guilty of possession with intent to deliver and conspiracy. Appellant was sentenced to a term of imprisonment of not less than seven and one-half nor more than fifteen years. He was also ordered to pay a fine of $100,000.00. Post-trial motions were denied and, on appeal, the Superior Court affirmed, filing a memorandum opinion. 277 Pa.Super. 635, 424 A.2d 557. Judge Lipez filed a dissenting memorandum opinion. We granted appellant's petition for allowance of appeal and now reverse.

1. Section 13(a)(16) of The Controlled Substance, Drug, Devise and Cosmetic Act (Act), Act of April 14, 1972, P. L. 233, *as amended*, 35 P.S. § 780–113(a)(16).

2. Section 13(a)(30) of the Act, 35 P.S. § 780–113(a)(30).

3. Section 903 of the Crimes Code, *as amended*, 18 Pa.C.S. § 903.

The sole issue raised by appellant in his petition for allowance of appeal and, therefore the sole issue before us now [4], is whether the trial judge erred in his instructions to the jury concerning the possible verdicts the jury could render in this case.

The Commonwealth's evidence at trial established that on January 4, 1978 the police obtained a warrant to search a residence after an informant, who had been searched and given marked money, entered the property at about 5:00 p.m. and returned with heroin. At 9:00 p.m. when the police knocked on the glass storm door of the residence, a Bonnie Lee Sease, opened the inner door, looked through the glass, and slammed the door. Police then broke open both doors with force making considerable noise. Finding no one on the first floor they went upstairs. As one officer approached a back bedroom, which was illuminated only by the light from a television, he saw the appellant standing in the doorway of the bedroom with his arms outstretched behind the doorjamb. When the officer said "Police, freeze" appellant's hands went over his head. Co-defendant Fells was found sitting behind appellant on a bed. A search of the room uncovered forty packets of heroin in the pocket of a pants suit belonging to Fells which was hanging on a hook on the wall near the door very close to where appellant's left hand would have been if stretched in that direction. Each packet of heroin was estimated to have a retail value of twenty-five dollars.

Fells occupied the back bedroom of the residence and Sease, the front bedroom. Appellant did not live there but he was Fells' boyfriend and a frequent visitor. Appellant claimed a bag of money that was found in the room and correctly identified the amount of currency therein. Appellant stated he received no money from either Fells or Sease that evening. Sixteen hundred dollars in cash was found in appellant's wallet including the marked money which had

4. Appellant has briefed, and the Commonwealth has responded to, six other alleged trial errors. In view of our disposition of the principal issue, we do not reach these issues.

been given to the informant. According to one officer's testimony when Fells was questioned at the scene about whether she was selling heroin from the house, she said: "Maybe I was selling it." Sease testified she was unaware of the heroin in Fells' bedroom but admitted possession of half a packet found in her purse which she said had been given to her by Fells.

Appellant called the informant, whose identity had been discovered by the time of trial, who testified he had purchased the heroin on the first floor of the premises at about 5:00 p.m. from a Candy Brown from Harrisburg. Appellant explained the marked bills in his possession by testifying he had sold Candy Brown a coat in a nearby bar earlier that evening and had been paid for it in cash. Appellant's employer also testified that two months earlier appellant had received a substantial sum of money, which represented back pay owed to him, thus providing an alternative explanation of the funds found on his person. Both appellant and his co-defendant denied any knowledge of the heroin found in the bedroom. Appellant testified he did not enter the house until 7:30 or 8:00 p.m. and Fells testified she did not come downstairs from her bedroom until after the raid occurred.

When the trial court instructed the jury on how to render a verdict when two defendants and these three charges are involved he stated:

Now, because of this doctrine of Joint constructive possession, it would be illogical for you to find one of them guilty of possession and the other not guilty of possession of either kind, but it's logical that you could find their intentions would vary. But you can find them guilty, not guilty, or both guilty of possession of some kind, but you can't find one not guilty and one guilty of possession. . . .
I will repeat it: Not guilty—that's of anything; both guilty of possession, but not one guilty of possession and the other not guilty of anything.

Appellant's attorney specifically objected to this language and when questioned about the issue by the trial court, the

assistant district attorney agreed with appellant's counsel stating: "I don't think we should be put to a situation where we have only one theory in presenting the Commonwealth's case. It's up to the Jury to decide that, and in either event they should be able to find either Defendant guilty or not guilty as to the charge." The judge then indicated he would change the instruction if all the parties agreed he should but Fells' attorney stated he didn't agree. Nothing else was said to the jury.

The trial court's above instruction concerning the possible verdicts was clearly in error. Neither the simple possession statute nor the possession with intent to deliver statute requires a showing of joint liability. Indeed, the trial court's earlier substantive instructions on constructive possession were quite accurate in emphasizing the unique individual character of these possession crimes. *See Commonwealth v. Chenet*, 473 Pa. 181, 373 A.2d 1107 (1977). The use of the word "joint" with the phrase "constructive possession" only signifies that the defendant *and others* had both the power to control and the intent to exercise control over the narcotics. *Commonwealth v. Thompson*, 286 Pa.Super. 31, 428 A.2d 223 (1981). The main focus, however, is still on the defendant and the totality of circumstances surrounding his actions and situation. The trial court's instruction concerning the possible verdicts the jury could bring in was, therefore, not in accord with the law of constructive possession.

Furthermore, this part of the charge also had the undesirable effect of removing from the jury independent consideration of appellant's credibility and defenses apart from his co-defendant. The trial court apparently was concerned that the jury would render what he believed would be inconsistent or illogical verdicts as between the two co-defendants. Although understandable, this concern was unwarranted for two reasons. First, verdicts convicting the co-defendant and acquitting the appellant or vice versa could be reconcilable on the basis of the different evidence adduced against each defendant at trial. *Commonwealth v. Merbah*, 270 Pa.Super. 190, 411 A.2d 244 (1979). Secondly,

even if it is assumed that the verdicts would be inconsistent, such verdicts are not objectionable. *Commonwealth v. Kirk*, 340 Pa. 346, 17 A.2d 195 (1941).

The trial court here improperly withdrew from the jury part of its traditional role of fact-finder possibly precluding them from being allowed to believe "all, part or none of the evidence presented" as to each defendant. *Commonwealth v. Williams*, 450 Pa. 158, 162, 299 A.2d 643, 645 (1973). In an analogous situation where a trial court charge required the jury to render a verdict of guilty or not guilty as to all of the charges against one defendant, the Superior Court stated: "While we may share the lower court's difficulty in logically reconciling [guilty and not guilty verdicts] the fact remains that this determination is vested solely in the jury." *Commonwealth v. Stegmaier*, 247 Pa.Super. 159, 162, 371 A.2d 1376, 1378 (1977). Because this charge in this case invaded the jury's province as exclusive fact-finder and precluded the jury from independently assessing the guilt or innocence of each defendant, we must reverse.

Judgments of sentence reversed and the case is remanded for a new trial.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.