COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

Commonwealth of Pennsylvania

vs.

Aida Rodriquez

CP 9004–4539, 4540

Commonwealth of Pennsylvania

vs.

Luz Rodriquez

CP 9004–4536, 4537, 4538

*OPINION*

The above two defendants were brought to trial as codefendants under the above captioned terms and bill of information numbers on February 23, 1993. Defendant Aida Rodriquez was charged with possession of a controlled substance with intent to deliver and criminal conspiracy. Defendant Luz Rodriquez was charged with possession of a controlled substance with intent to deliver, and possession of drug paraphernalia. She was not charged with conspiracy. A jury found each Defendant guilty of all the charges—Defendant Aida Rodriquez with reference to drugs found at 2928 North Ella Street and conspiring to possess drugs at Ella Street with persons other than codefendant Luz Rodriquez; Defendant Luz Rodriquez with reference to drugs found at 218 E. Indiana Street, as a joint possessor of the drugs found at Ella Street, and of possessing drug paraphernalia at 218 E. Indiana Street.

Defendants filed post-trial motions asking for Arrest of Judgment and Acquittal and/or a new trial. A Judgment of Acquittal will be ordered for Aida Rodriquez. A new trial will be ordered for Defendant Luz Rodriquez.

## I. *Aida Rodriquez*

In reconsideration, the Court concludes that it erred in denying Aida Rodriquez's Motion to Suppress the evidence seized based on the faulty execution of a search warrant by Philadelphia Police Officers. After reviewing the testimony and arguments, the Court now concludes that it may have misconstrued certain statements made by defense counsel in argument which led the Court to believe defense counsel had conceded the issue on whether the police officers complied with Criminal Rule of Procedure 2007, requiring the officers to "knock and announce."

A review of the testimony makes clear that defense counsel did not concede this issue but, instead, focused argument on other matters. For this reason, and the following legal analysis, the Court reverses its decision, thereby granting defendant Aida Rodriquez's Motion to Suppress all physical evidence seized as a result of the illegal entry. Following this conclusion, the verdict against her must be vacated, because absent the evidence, no case beyond a reasonable doubt can be made out against her.

Criminal Rule of Procedure 2007, Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution, requires police officers to "knock and announce" when executing a search warrant, allowing for a reasonable period of time for response from the occupants of the premises. If there is no response after the lapse of such reasonable period of time, the police may forcibly enter the premises.

The case law, however, allows for certain exceptions to this standard. In *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991), the Pennsylvania Supreme Court enunciated four such exceptions. Police may override the knock and announce rule if "1) the occupants remain silent after repeated knocking and announcing; 2) the police are virtually certain that the occupants of the premises already know their purpose; 3) the police have reason to believe that an announcement prior to entry would imperil their safety; and 4) the

police have reason to believe that evidence is about to be destroyed." *Id.*, 598 A.2d at 541. See also *Commonwealth v. Means*, 531 Pa. 504, 614 A.2d 220 (1992). None of these exceptions are applicable in this case.

Police Officer Staunton, in her direct testimony on the Motion to Suppress, testified as follows:

Q: [By the Assistant District Attorney] What happened next?

A: We went to 2928 Ella Street where I had observed the male in the red jacket, Julio Rodriquez, and an unidentified male going towards 2928. When we stopped, Officer Brosman, he grabbed Julio Rodriquez, wearing a red jacket. I then proceeded up the steps. The screen door had closed. The unidentified male had already entered the premises.

Q: How had that male entered the premises?

A: I knocked on the screen door. I yelled "police, we have a warrant." And I *immediately* went in . . . (Emphasis added.) (2/19/93, N.T., pgs. 24–25).

Officer Staunton further testified that the premises was a brick rowhouse with a metal screen door (2/19/93, N.T., p. 16); that when she got to the front steps of the premises she could look directly into the house; that she could see six male individuals in the living room and defendants Luz and Aida Rodriquez along with a younger Hispanic female and an older Hispanic female seated at the kitchen table. (2/19/93, N.T., p. 31).

The only testimony that could give rise to an inference of one of the listed exceptions was Officer Staunton's testimony on cross examination, as follows:

Q: [By Ms. Purnell for Aida Rodriquez] Particularly in this case where you had a suspect fleeing into the premises you were concerned for your safety?

A: That's correct.

(2/19/93, N.T., p. 32). In and of itself, the above does not satisfy the burden upon the Commonwealth to prove an

exception to the "knock and announce" rule. *Commonwealth of Pennsylvania v. Beard,* 501 Pa. 385, 461 A.2d 790 (1983) cited by the Commonwealth is inapposite because there not only were the occupants outside and who had gone inside but one of them shouted "police".

The testimony makes clear that the officer's entry into the premises was simultaneous with her knock and announcement of her presence as required by Rule 2007. See *Commonwealth v. Rudisill,* 424 Pa.Super. 313, 622 A.2d 397 (1993) (Penn. knock and announce rule violated where forcible entry occurred after knock but simultaneous with identification as police officers); See also *Commonwealth v. Bull,* 422 Pa.Super. 67, 618 A.2d 1019 (1993) (forcible entry simultaneous with knock and announce, deemed illegal).

Secondly, the argument that officers were in hot pursuit of a suspect who was entering the house must be rejected. The testimony, at best, from the Commonwealth's point of view is unclear on this point. The evidence does not show that the unidentified male was aware of a police presence. If the officers were in hot pursuit of a suspect, there would have been no reason for the police officers to knock and announce. They could have simply entered on the heels of the alleged criminal. Therefore, a hot pursuit or exigent circumstances exception to the Rule must be rejected.

Finally, any allegation of danger to safety, although barely raised, is not convincing beyond a preponderance of the evidence. Again, under limited circumstances, police may disregard the knock and announce rule where they believe that announcing themselves "would imperil their safety." *Commonwealth v. McDonel,* 411 Pa.Super. 187, 601 A.2d 302, 306 (1991). But, in *McDonel,* the Court was unwilling to create a presumption that "exigent circumstances sufficient to do away with the knock and announce rule [would] exist any time a search for drugs is conducted." Id.

Essentially, such a presumption would entail an assumption that every time a crime involved drugs, weapons were likely to be present, thereby endangering the officers lives. This type

of presumption, the Court opined, was much better left to careful studies by the legislature. Allowing a court to take judicial notice of the presence of weapons does little to protect an officer and does great harm to the protections afforded to citizens under the Constitution. See also *Commonwealth v. Grubb*, 407 Pa.Super. 78, 595 A.2d 133 (1991). It must be remembered that the rationale for requiring a time lapse and a requirement that the police knock and announce themselves is to give the occupants of the premises sufficient time to reflect and surrender the premises *peacefully*. This concept guarantees that occupants will not have resisted because they are unaware it is police who are going to enter.

As a result, the execution of the search warrant failed to meet the standards prescribed by Rule 20C7.

## II. *Luz Rodriquez*

The entry into 2928 North Ella Street was unlawful. However, a valid search warrant existed for the home of Luz Rodriquez located at 218 East Indiana Street. Within its four corners, it demonstrated probable cause that the contraband would be found there.

Defendant argues that the search warrant 68892 lacked probable cause upon its face because the name of the occupant or owner of the premises was seemingly unrelated or unconnected to Luz Rodriquez and not sufficiently described. Defendant asserts that the inclusion of facts identifying owners or occupants as a Hispanic male, a description of his age and weight and clothing, and that he was on those premises, makes the search warrant relating to Luz Rodriquez unlawful. We reject that argument for the following reasons.

There is no requirement that a search warrant specifically state by name the owner of the premises. The only requirements are that the affidavit of probable cause include "a) the date and time of issuance; b) specific identification of the property to be seized; c) name or description with particularity the person or place to be searched ..." Rule 2005, 42 Pa.C.S.A. A description of the place to be searched does not

490

mandate that the affidavit include any specific or certain description. It only requires a description with particularity, a standard met in this case.

Neither Luz nor Aida Rodriquez or any other person need be mentioned in the warrant. Other persons were described along with an acceptable description of the premises to be searched and a connection or relationship between such males and the premises is set forth in the affidavit of probable cause.

The above arguments are common to the affidavits for both Aida and Luz Rodriquez. The affidavits of probable cause are virtually identical. Without elaborating, we conclude that given the totality of the circumstances described and applying a common sense interpretation, it is more likely than not that contraband will be found on the premises. See *Commonwealth v. Pleummer*, 421 Pa.Super. 51, 617 A.2d 718 (1992).

Defendant Luz Rodriquez argues that the illegal entry into 2928 North Ella Street led to the search of 218 E. Indiana Street and, therefore, all evidence seized in this second search must be suppressed as "fruit of the poisonous tree."

However, the validity of the search warrant for 218 E. Indiana Street on its face negates a "fruit of the poisonous tree" argument since it created an independent source for the search and seizure of the contraband found. *Commonwealth v. Ariondo*, 397 Pa.Super. 364, 580 A.2d 341 (1990). It was inevitable that the contraband would have been seized at 218 E. Indiana Street. Whether Luz Rodriquez's consent was valid or not is immaterial.

Given our conclusion that the evidence seized from Indiana Street was proper, the following issues must be addressed:

First, was that evidence in and of itself sufficient to support the jury's verdict against her as to the drugs and drug paraphernalia found there?

Secondly, are there other factors that require a new trial rather than entering a Judgement of Sentence based on the quantity found at 218 E. Indiana Street (and the paraphernalia)?

Briefly, in support of the sufficiency of the evidence, there is the quantity, its scattered sites throughout the premises, Defendant's knowledge as to where these items were located, indicia of Luz Rodriquez's occupancy and/or control of the premises such as a gas bill in her name and a letter from the Department of Welfare addressed to Luz Rodriquez, her possession of a key to the premises and the presence and abundance of adult female clothing there.

However, here the jury also convicted Defendant Luz Rodriquez of possession of the contraband at Ella Street on a joint possession theory; that is, that Luz and Aida Rodriquez jointly and constructively possessed the contraband there. Since we have concluded that evidence should have been suppressed and not gone to the jury, it cannot be said that that evidence did not influence or prejudice the jury against Luz Rodriquez and lead to the guilty verdict as to the contraband and paraphernalia found at Indiana Street.

In light of the above, it appears unnecessary to address in any detail Defendant Luz Rodriquez's other arguments concerning the validity of her consent to search Indiana Street, and that the Court's charge on joint possession was erroneous or at least materially misleading. We will note only that we conclude that *Commonwealth v. Slaton*, 530 Pa. 207, 608 A.2d 5 (1992) is distinguishable from the facts here.

We will also note that the Trial Court's charge may have given the jury the impression that it had to join the guilt or innocence of Defendant Luz Rodriquez together with that of her codefendant Aida Rodriquez.

In addition to the general charge regarding joint possession, the Court stated the following:

In Common English language, I guess reduced to the bottom line is was it theirs to do with? Or was it someone else's to do with? Did these people have the power and the intent to control the destiny of the controlled substance, or in the case of Luz Rodriquez, the drug paraphernalia? Or was it for someone else to have that power and intent? It's

not just a question of power, it's also a question of intent to exercise that power. (N.T. 3/1/93, pp. 388–389.)

Upon review of the Court's charge, in toto, together with the language cited above, it cannot be said that the jury understood clearly that the guilt or innocence of Luz Rodriquez was not wed to the guilt or innocence of codefendant Aida Rodriquez with respect to the contraband at Ella Street. *Commonwealth v. Tyler,* 495 Pa. 662, 435 A.2d 1212 (1981) and cases cited therein are controlling.

Appropriate Orders will issue.

BY THE COURT:

/s/ Samuel M. Lehrer
 SAMUEL M. LEHRER, J.
 3/29/95