679 A.2d 795

**COMMONWEALTH of Pennsylvania**

**v.**

**Michael DOUVENTZIDIS, Appellant.**

Superior Court of Pennsylvania.

Argued March 5, 1996.

Filed June 26, 1996.

282

William J. Honig and Jerome Brown, Norristown, for appellant.

Mary M. Killinger, Executive Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before DEL SOLE, JOHNSON and CERCONE, JJ.

DEL SOLE, Judge.

This is an appeal from a judgment of sentence of 6 to 23 months for possession of a controlled substance with intent to deliver. We vacate Appellant's judgment of sentence and remand for a new trial.

On April 9, 1993, police officer Anthony Santoro, Detective Michael Altieri and three other officers, went to the home of Gary Malcolm for the purpose of executing a search warrant. When they approached the dwelling, they discovered that its wooden front door was opened one quarter of the way and that the outer screen door was closed. As they looked through the screen, they could see Appellant, Michael Douventzidis, laying on a couch located approximately six to eight feet from the door and watching television with a puppy on his chest. (Suppression Hearing Transcript dated 5/18/94 at pp.

11, 14, and 27).[1]  Officer Altieri testified that at this point, they knocked on the screen door once or twice and he announced that they were the police and had a search warrant. (N.T. at p. 25).  According to Officer Altieri, Appellant looked at them "through the crack in the door" but remained laying on the couch.  (N.T. at p. 28).  After waiting 10 to 15 seconds, the officers entered the home.  In response to their question of whether there were any drugs in the house, Appellant answered, "yes", and led the officers to the kitchen where he opened a cabinet and removed a bag containing smaller bags of marijuana having a combined weight of more than a pound. In addition, the search also uncovered certain drug paraphernalia.

Appellant argues there was insufficient probable cause to support issuance of the warrant and that the police improperly executed it.  We find merit in Appellant's second claim.[2]

In reviewing the denial of a suppression motion, we must: determine whether the factual findings of the (suppression) court are supported by the record.  In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted.  If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error.  *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).

*Commonwealth v. McDonel*, 411 Pa.Super. 187, 190–191, 601 A.2d 302 (1991) [additional citations omitted].

At the close of Appellant's suppression hearing, the court offered the following findings to support its holding that the warrant was properly executed.

1. All references to notes of testimony set forth herein refer to the Suppression Hearing Transcript dated May 18, 1994.

2. Because we find merit in Appellant's claim that the warrant was improperly executed, we need not address his claim regarding whether the warrant was supported by probable cause.

The court finds that the—that Detective Altieri announced, police. The Court is unable to find whether or not he announced, we have a search warrant. The court makes no finding as to whether that was announced.

The court finds that the officers knocked, waited 10 to 15 seconds. The Court also finds that the subject was lying on the couch the entire time, looked at the police officer— looked toward the door at the police officers, did not make any attempt to move or get up or flee or open the door or do anything. He continued to play with the dog the whole time.

The Court finds that when the officers opened the screen door and entered the room, the subject got up from the couch and stood.

The Court has gone over the different cases that you people have submitted to me. And it's clear that under Rule 2007, a police officer is to give notice of his identity, authority and purpose to any occupant of the premises unless exigent circumstances require immediate forcible entry. The Court finds that there was no forcible entry in this case. And I'm quoting from *Commonwealth v. Davis*, [407 Pa.Super. 415] 595 A.2d [1216] 1222 [(1991)]: The purpose of the knock and announce rule are [sic] or purposes are to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectations against unauthorized entry of persons unknown to him or her, and to prevent property damage resulting from forced entry.

The Court finds that the defendant's expectations of privacy, if indeed they existed at all, were absolutely at a minimum when one lies on one's couch on the first floor of a residence with the screen door—with the main door open and the screen door closed, they cannot expect to have the privacy one would have behind a locked door. Anyone coming to the door to knock could look right in and see them in their house or what they're doing. So that I would distinguish most of the cases that were given to me on that basis.

The second basis is the whole purpose, the way I see it, is to give the occupant a reasonable time in which to surrender

their privacy. Well, here the defendant was able to just by turning his head see who was standing there with the words, Police, on their chest, and then did not make any effort to move, but again, the question is whether or not he had surrendered virtually all of his privacy by lying there in an open doorway.

I'm quoting from *Commonwealth v. Clemson*, 234 Pa.Super. 191, 338 A.2d 649, 651: The announcement doctrine is designed to protect the privacy afforded by the Fourth Amendment. An intrusion is no less an intrusion, quote, whether officers break down a door, comma, force open a chain lock on a partially opened door, comma, open a locked door by use of a passkey, or open a closed but unlocked door.

Except for that very last statement, a closed but unlocked door, and I don't think any of these situations fit. I don't think a screen door is synonymous with quote, closed but unlocked door because you can see through it. A closed but unlocked door would be a regular door. It's closed but you may have to force it open. A screen door, I don't think, affords anyone the privacy that a wooden or an opaque door would provide.

Now, although I did not find or I did not make a finding that the police specifically said, we have a search warrant, namely, announced their purpose, I am not—I don't believe that this requirement is absolute and I feel that this—this is one of the situations where the occupant remained after repeated knocking and announced they were police. Their jackets had the word, Police, on it and again, the purpose of the knock and announce is to give people time to open the door, so no one uses a battering ram or shoots a lock off or slams into the door and breaks it.

So based upon those reasons—I found also under *Commonwealth v. Beard*, that case can be distinguished. In that case the police did not knock or announce but chased the man into his house and the entry was far from peaceful. I find that the 10 to 15 second delay again, although there is a case *Commonwealth v. Mazella* which discusses the number

of seconds, I would distinguish that situation from this one by quoting, they quote a case *Commonwealth v. [DeMichel] Demachelle,* and that cite is 442 Pa. 553, 277 A.2d 159, a 1971 case, where the court held that a delay of five to 15 seconds was insufficient to give the occupants an opportunity to surrender the premises voluntarily. And again they say, regardless of how great the probable cause to believe a man guilty of a crime, he must be given a reasonable opportunity to surrender his privacy voluntarily. And the Supreme Court is saying that the time period of five to 10 seconds was unreasonably short. And I would say that this case based upon the totality of the circumstances, the fact that there was number one, an open door, number two, there was virtually no force used, there was no violence, and the fact that the occupant of the home was lying six to eight feet from the open door, saw the police, saw their jackets with the word police and did nothing to get up and open the door, to me he was certainly given a reasonable expectation of privacy. I mean, excuse me, he was given a reasonable expectation to stand up voluntarily and he didn't, and I don't feel that entering the residence under these circumstances would constitute the kind of forcible entry that the Fourth Amendment is designed to prevent.

(N.T. at pp. 51–55).

■ Unlike the suppression court, we find this case presents us with a myriad of reasons why the execution of the search warrant was improper. First, the police clearly did not comply with the well established "knock and announce" rule of this Commonwealth when they failed to state their purpose prior to entering the dwelling. "A search is not to be made legal by what it turns up. In law it is good or it is bad when it starts and does not change character from what is dug up consequently." *Commonwealth v. Chambers,* 528 Pa. 403, 411, 598 A.2d 539, 542 (1991) (citing *Commonwealth v. Newman,* 429 Pa. 441, 449, 240 A.2d 795, 799 (1968)) [additional citations omitted]. At the suppression hearing, both Officer Santoro and Detective Altieri testified that when Detective Altieri knocked on the door and announced "police", he also stated they were there to execute a search warrant. During cross

examination of these individuals, however, it became unclear whether Detective Altieri stated their purpose prior to entering the home. Accordingly, the suppression court specifically refrained from making any finding regarding whether Detective Altieri, in fact, announced their purpose. The Commonwealth labels the officers' failure to announce, a mere "oversight" and claims it was reasonable under the circumstances. We disagree. Rule 2007 of the Rules of Criminal Procedure directs as follows:

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of authority and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

In the present case, there is no evidence of exigent circumstances that would excuse the police from announcing their purpose. In fact, the officers testified that they looked through the screen door and saw Appellant simply laying on the couch watching television. Furthermore, Officer Santoro testified that as they approached the house, he didn't hear any strange noises within the home. (N.T. at p. 22). In light of these facts and in the absence of any legal support for the officers' failure to announce their purpose prior to entering the dwelling, we hold the search was invalid.

In addition, the suppression court placed great emphasis on the fact that the officers entered through a screen door rather than through a door made of solid material. The court reasoned that because anyone could see through the screen door, Appellant's right to privacy was somehow diminished. We disagree.

The purpose of the "knock and announce" rule is to prevent violence and physical injury to the police and occupants, *to protect an occupant's privacy expectation against the unauthorized entry of unknown persons,* and to prevent property damage resulting from forced entry. [citations omitted]. The purpose may be achieved only if the police officer awaits a response for a reasonable period of time after his announcement of identity, authority, and purpose. [emphasis added].

. . .

The rule is intended to protect individuals from searches and seizures that are unreasonable because of the manner of the execution of a warrant.

*Commonwealth v. Chambers,* 528 Pa. 403, 408, 598 A.2d 539, 541 (1991).

Without citing to any legal authority in support of its position, the suppression court reasoned that because Appellant was "lying in an open doorway" he had "surrendered virtually all of his privacy". (N.T. at p. 53). A close examination of the testimony provided to the suppression court does not support this conclusion. The testimony clearly shows that the home's solid door was open only a quarter of the way. The limited view of the interior of the home could, in fact, only be obtained by standing at the front doorway and looking through its narrow opening.

■ The court also reasoned that because Appellant could see the officers through the screen door, the purpose of the "knock and announce" rule was fulfilled. We disagree. If anything, the facts indicate Appellant did not hear Detective Altieri knock and announce the officers' presence. While Appellant may have looked towards the door, as one might if they thought they heard a noise, there is absolutely no indication that he saw the officers through the doorway's small opening. In addition, the officers testified that the puppy laying on Appellant's chest had no reaction to their presence at the door. Therefore, we cannot agree with the suppression court's ruling that, because the Appellant saw the officers

through the screen door, the purpose of the "knock and announce" rule was satisfied.

■ Finally, we hold that the officers failed to wait a reasonable amount of time before entering the premises. (*See Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971) delay of 5–15 seconds was inadequate; *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968) delay of 20 seconds was not reasonable; *Commonwealth v. McDonel*, 411 Pa.Super. 187, 601 A.2d 302 (1991) delay of thirty seconds was insufficient). By their own admission, the officers knocked only once or twice—"[j]ust a couple of bangs on the door" (N.T. at p. 28), waited only 10–15 seconds and entered the dwelling. We find no exigent circumstances that would warrant such an entry.

Accordingly, we hold that the officers improperly executed the search warrant by failing to comply with the "knock and announce rule" set forth in Rule 2007 of the Rules of Criminal Procedure, Pa.R.Crim.P. No. 2007, 42 Pa.C.S.A.

Judgment of sentence is vacated and the case is remanded for a new trial. Jurisdiction relinquished.